**quinn emanuel** trial lawyers | los angeles

295 5th Avenue, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S EMAIL ADDRESS
hopeskibitsky@quinnemanuel.com

VIA ECF

November 14, 2025

United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: Letter-Motion to Unassigned Judge for Pre-Motion Conference to Quash in Connection With Subpoenas Issued to Broker Genius Inc., d/b/a Automatiq and Sam Sherman**

Your Honor:

Pursuant to Federal Rules of Civil Procedure 26(c) and 45(d), and Local Civil Rule 37.2, we represent non-parties Broker Genius Inc. d/b/a Automatiq ("Automatiq") and its Chief Executive Officer Shmuel "Sam" Sherman (collectively, the "Non-Parties"). We request a pre-motion conference regarding their motion to quash or modify the deposition subpoenas (the "Subpoenas") served by Spotlight Ticket Management, Inc. ("Spotlight") in *Spotlight Ticket Management, Inc. v. Concierge Live, LLC*, Case No. 24-CV-00859-WLH-SSC (C.D. Cal.) (the "California Litigation"), attached as Exs. 1-2 (Subpoena to Automatiq and Mr. Sherman, respectively) to the accompanying Declaration of Hope Skibitsky.

**LOCAL RULE 37.2 CERTIFICATION**: Non-Parties Automatiq and Sherman offered multiple compromises—including a declaration in lieu of testimony, and a deposition of its Chief Product Officer, Drew Gainor (which will be proceeding next week), an employee with potential knowledge of some issues on which Spotlight has focused. However, Spotlight has rejected every proposal and ignored repeated requests to narrow the Subpoenas or discuss cost-shifting under Rule 45. Ex. 3. Spotlight also engaged in inappropriate conduct. Just days after communications between outside counsel, Spotlight's in-house counsel directly contacted Automatiq—a represented party—to threaten liability unless it stopped providing services to Concierge Live, LLC ("Concierge Live"), which is Spotlight's competitor. Exs. 4, 8. The parties are at an impasse.

**THE DISPUTE AND BASIS FOR THE MOTION**: Although the lawsuit began with broad tortious-interference claims—now dismissed by the California court—the California Litigation has narrowed to a false-advertising dispute between competing ticket-management software companies.

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

Spotlight alleges that Concierge Live falsely represented having "integration" (a disputed term) with Ticketmaster, a capability Spotlight claims is, or at least was, exclusive to it. Concierge Live, in turn, contends that Spotlight falsely disparaged its services by asserting such exclusivity. The California court has limited the case to Spotlight's allegations concerning Concierge Live's purported "misrepresentations of integration." Ex. 5 (Order on Motion to Dismiss).

Spotlight now seeks intrusive and burdensome discovery from non-party Automatiq and its CEO (of a company of over 300 employees) about Concierge Live's "integration" with Ticketmaster—a term the California Court found Spotlight has never defined, (*id.* at 7) and myriad other overbroad topics. Automatiq provides technology enabling Concierge Live's use of Ticketmaster's application programming interfaces (APIs), but Ticketmaster has already produced discovery on this topic, and Concierge Live itself has direct knowledge. Courts consistently require litigants to exhaust party discovery before burdening non-parties. *Burns v. Bank of Am.*, 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007). Discovery from Automatiq cannot alter Ticketmaster's contractual terms or policies.

Automatiq has no firsthand, non-duplicative knowledge of Concierge Live's customer communications—the central issue remaining in the California Litigation. As a technology vendor, Automatiq is uninvolved in Concierge Live's marketing or sales. Despite being a non-party, it has already produced to Spotlight contracts, service descriptions, and correspondence relating to Ticketmaster "integration," however that might be defined, and offered the deposition of Mr. Gainor, its Chief Product Officer.

Notwithstanding these efforts, Spotlight has refused serious compromise. Automatiq raised cost-shifting at least five times (May 29, Oct. 21, 24, 29, and Nov. 9, 2025) and invoked the apex doctrine for Mr. Sherman (on Oct. 24, Nov. 9 and 11, 2025). Ex. 3. Spotlight has unreasonably ignored these requests, stating it "cannot at this time agree to any limitations." *Id*. Its refusal to engage with Rule 45's protections shows its goal is harassment, not discovery. The subpoenas should be quashed.

**NUMEROUS INDEPENDENT GROUNDS REQUIRE QUASHING THE DEPOSITION SUBPOENAS**

**I.      Spotlight Cannot Demonstrate Relevance**

Spotlight bears the burden of showing relevance. *Phoenix Bulk Carriers (BVI), Ltd. v. Triorient, LLC*, 2021 WL 621226, at *3 (S.D.N.Y. Feb. 17, 2021). It cannot do so here. In ruling on Concierge Live's motion to dismiss, the California Court expressly limited the case to Concierge Live's alleged misrepresentations as they relate to Spotlight's false advertising claims. *See* Ex. 5 at 11–13 (Order). As a result, Automatiq's internal technology is not relevant and, moreover, constitutes highly sensitive proprietary information. This is particularly concerning given that Spotlight and Concierge Live are competitors, and Spotlight appears to have targeted Automatiq in part to discourage it from doing business with Concierge Live. Further, Ticketmaster's discovery has resolved the factual issues Spotlight seeks to explore. On October 31, 2025, Ticketmaster's counsel produced a letter (Ex. 6) confirming: (1) Spotlight's contractual exclusivity with Ticketmaster expired on October 6, 2017, without written extension (¶¶ 8–10); (2) since at least February 2019, Ticketmaster's TradeDesk API terms have permitted corporate ticket management services such as Concierge Live's integration (¶ 15); and (3) Concierge Live has properly used the TradeDesk API for integration since approximately April 2019 with Ticketmaster's knowledge and approval (¶ 20). Because Ticketmaster is the

authoritative source, further discovery from Automatiq would be duplicative and immaterial. Notably, Spotlight's Amended Disclosures in the California Litigation, updated as of just a few weeks ago, *still* do not list Automatiq or Mr. Sherman as likely sources of discoverable information. Ex. 7.

## II. The Subpoenas Were Issued for an Improper Purpose

A subpoena is improper if issued in bad faith or for an improper purpose, such as to harass. *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). Spotlight's conduct demonstrates precisely that.

*Improper Contact*. On May 23, 2025, after conferring with Automatiq's counsel about a separate document subpoena, Spotlight's in-house counsel directly contacted represented party Automatiq, threatening it with liability unless it ceased services to Spotlight's competitor, Concierge Live—violating Cal. R. Prof. Conduct 4.2 and N.Y. Rule 4.2(a). Automatiq objected on May 29 but continued to seek compromise. Exs. 8-9 & 3.

*Abandonment/Public Ambush*. Spotlight then went silent for over four months, abandoning the discovery it had previously claimed was essential. Then, on September 16, 2025, knowing that the Quinn Emanuel firm represented Automatiq in connection with the California Litigation, Spotlight abruptly served deposition subpoenas on Automatiq, Mr. Sherman (Automatiq's CEO), and Mr. Gainor (Automatiq's Chief Product Officer) at an industry conference in Los Angeles—a public spectacle with no substantial purpose other than to embarrass. *See* Cal. R. Prof. Conduct 4.4; N.Y. R. Prof. Conduct 4.4(a).

*Refusal to Compromise*. Automatiq has produced relevant contracts and other documents including correspondence, and offered the deposition of Mr. Gainor. Spotlight nevertheless refused to withdraw the present subpoenas until after Mr. Gainor's deposition, telling Automatiq and Mr. Sherman that they had to seek to quash the subpoenas otherwise Spotlight would seek contempt of court. Ex. 3.

This pattern of unethical contact, abandonment, public humiliation, and refusal to compromise confirms the subpoenas serve no legitimate purpose.

## III. The Subpoenas Impose Undue Burden in Violation of Rule 45

Rule 45 requires parties to "take reasonable steps to avoid imposing undue burden or expense" on non-parties. Fed. R. Civ. P. 45(d)(1), (d)(3)(A)(iv). Non-party status carries "special weight" against disclosure. *Cohen v. City of New York*, 255 F.R.D. 110, 117 (S.D.N.Y. 2008). Courts are "particularly sensitive" to compelling non-party discovery. *Id.*; *Burns*, 2007 WL 1589437, at 14.

Spotlight demands three seven-hour depositions from non-parties—21 hours total—though Ticketmaster's discovery moots its requests and Concierge Live has the same information, and even though it has not yet deposed the two main adverse party witnesses in this litigation. It also ignored multiple cost-shifting requests and apex doctrine objections. Its refusal to discuss costs or alternatives in a serious fashion violates Rule 45 and supports quashing. *Jackson-Lipscomb v. City of New York*, 2019 WL 6139443, at *3 (S.D.N.Y. Oct. 7, 2019).

3

### IV. The Subpoena to Mr. Sherman Violates the Apex Doctrine

Courts apply special scrutiny to attempts to depose high-ranking executives. *Oakley v. MSG Networks, Inc.*, 2024 WL 4134903, at *2 (S.D.N.Y. Sept. 10, 2024). The requesting party must show the executive has unique, firsthand knowledge unobtainable elsewhere. *Harapeti v. CBS Television Stations Inc.*, 2021 WL 3932424, at *2 (S.D.N.Y. Sept. 2, 2021).

Mr. Sherman, Automatiq's CEO, has no unique information about Concierge Live's integration with Ticketmaster. That is the domain of Mr. Gainor, Automatiq's Chief Product Officer. As the court observed in *Oakley*, an apex executive sits removed from the key facts of the dispute. *Id.* at 3. Spotlight's insistence on deposing Mr. Sherman before or alongside deposing Mr. Gainor violates the apex doctrine. *Jackson-Lipscomb*, 2019 WL 6139443, at *5.

### V. The 30(b)(6) Subpoena to Automatiq Is Duplicative and Vastly Overbroad

A Rule 30(b)(6) deposition is unnecessary when the same information can be obtained through individual witnesses. Mr. Gainor has agreed to sit for a deposition on the noticed date of November 21. Spotlight has not shown any further need for the corporate deposition of Automatiq, and has not identified any knowledge Automatiq possesses that Mr. Gainor does not. "[R]edundant depositions should be avoided." *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, 2008 WL 5099957, at *1 (S.D.N.Y. Dec. 3, 2008).

The 30(b)(6) topics are vague, compound, and overbroad, and would be highly inappropriate if served on a party, to say nothing of non-party Automatiq. Topic 1 seeks how "Automatiq's systems interact with Ticketmaster's systems, whether through an integration or otherwise," using terms the California Court found Spotlight cannot itself even define. Ex. 5. Topic 4 improperly seeks Automatiq's "understanding" of industry terminology, demanding expert opinion from a non-party fact witness. Topics 14–15 seek corporate testimony regarding "all communications" with Ticketmaster over unlimited periods—information Ticketmaster already produced or available from Concierge Live. Preparing witnesses on such vague topics would impose burdens unjustified for a non-party uninvolved in the alleged misrepresentations

**REQUESTED RELIEF**: Automatiq and Mr. Sherman respectfully request that the Court quash the subpoenas in their entirety as irrelevant, duplicative, harassing, and unduly burdensome, and as violating the apex doctrine. Automatiq further seeks attorneys' fees and costs under Rule 45(d)(1) for Spotlight's bad-faith conduct and to deter further abuse of the discovery process. We thank the Court for its attention and respectfully request a pre-motion conference.

Respectfully submitted,

*/s/ Hope Skibitsky*

Hope Skibitsky